# Struthers Coal & Coke Company *v.* Union Trust Company, Appellant.

*Corporations—Corporate mortgage—Trusts and trustee—Discretion of trustee—Retirement of bond—Sinking fund—Construction mortgage.*

1. A court of equity has jurisdiction to control the exercise of the discretion of the trustee of a corporate mortgage, where such discretion has been abused.

2. Where a dispute has arisen between a corporation and the trustee of a mortgage made by the corporation, as to the method of retiring bonds under the sinking fund clause in the mortgage, a court of equity may assume jurisdiction to settle the dispute as an actual one, and in so doing it does not deal with a mere abstract proposition.

3. Where a coal company's mortgage provides that certain of the bonds secured thereby may be redeemed at a premium, and certain others, termed serial bonds may be redeemed at par at any interest paying date, and the trustee of the mortgage is authorized to use the sinking fund to purchase and retire one or more of the bonds without specifying the class of the bonds, the trustee is bound to redeem the serial bonds, at par if possible, before purchasing at a premium the long term bonds.

Argued Nov. 4, 1909. Appeal, No. 212, Oct. T., 1909, by defendant, from decree of C. P. No. 3, Allegheny Co., Feb. T.,

1909, No. 628, on bill in equity in case of Struthers Coal & Coke Company and Quin D. Hibbs et al. v. The Union Trust Company of Pittsburg. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before MILLER, J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The decree entered in the court below was as follows:

And now, to wit, September 15, 1909, this cause came on to be heard at this term and was argued by counsel, and upon consideration thereof it is ordered, adjudged and decreed as follows, viz.:

1. That defendant be and is hereby enjoined from at any time using the sinking fund under the mortgage involved in this case to retire long term bonds at five per cent premium unless and until the defendant has first made diligent but unsuccessful efforts to retire serial bonds at par.

2. That by the terms of said bond and mortgage said sinking fund is applicable in the hands of the defendant as trustee to retire at par serial bonds, both as and when they severally mature and also at any time before maturity.

3. The defendant individually to pay one-half of the costs; plaintiffs the other half.

4. The bill to be retained for the purpose of affording further relief hereafter if occasion therefor exists and be made to appear.

*Error assigned* was the decree of the court.

*J. H. Beal,* of *Reed, Smith, Shaw & Beal,* for appellant.— The court had no jurisdiction to make the decree entered in this case, because it is purely advisory in character; nor had it any right to embody in its decree a provision retaining the bill for the purpose of enforcing compliance with the advice so given: Morton's Est., 201 Pa. 269; Tyson's Est., 191 Pa. 218.

Under the terms of the mortgage it is neither the duty nor the right of the trustee to use sinking fund moneys to pay serial bonds at maturity.

The trustee has not refused, when requested by the coal company, to do anything which, under the mortgage as properly construed, it ought to have done.

*M. W. Acheson, Jr.*, of *Patterson, Sterrett & Acheson*, for appellee.—It might seem a hopeless task to find an adjudicated case involving an interpretation of instruments at all paralleling the language of the bonds and mortgage in the case at bar. Nevertheless, the case about to be cited presents a judicial construction of instruments (statutes and ordinances), relating to a sinking fund and making use of the word "purchase" and also of the word "redemption." The case, it seems to us, is a strong authority in support of the interpretation adopted by the court below and urged by the appellees: Bank v. Grace, 102 N. Y. 313 (7 N. E. Repr. 162).

OPINION BY MR. JUSTICE POTTER, January 3, 1910:

As stated by the trial judge, the controversy in this case is as to the proper interpretation of the terms of a trust mortgage, given to secure certain bonds. The Struthers Coal & Coke Company issued 500 bonds of $1,000 each secured equally and ratably by a mortgage upon the property and franchises of the company, each of the bonds stipulating in identical words for a sinking fund for the redemption and retirement of the bonds, which would redeem all of them if the coal was all mined during the life of the bonds. This fund, to be created by the payment of twenty-five cents per ton for each ton of coal mined from the premises, is ample to secure to the bondholders the proportionate amount of the value of the coal as it is mined or removed. The bonds numbered 1 to 300 are not payable until July 1, 1918, but are subject to redemption upon any interest paying date at a premium of five per cent. The bonds numbered 301 to 500, inclusive, are known as serial bonds, divided into ten series of $20,000 each, of which the first series matured July 1, 1908, and one series matures upon July 1 each year thereafter, until and including July 1, 1917. These bonds are by their terms subject to redemption at par and interest, upon any interest paying date.

It is provided in the mortgage that the moneys paid to the sinking fund shall be applied by the trustee:

"(a) Towards the purchase and retirement from time to time, in such manner, and at such prices as may be approved by the trustee (not, however, exceeding the price at which such bonds under the terms thereof, may be redeemed and retired) of one or more of the bonds secured thereby.

"(b) If, in the opinion of the trustee, bonds cannot be so purchased, then towards the redemption and retirement in the manner provided in this article, of the bonds issued and outstanding hereunder, in their numerical order beginning with the lowest outstanding bond."

Under the interpretation placed upon these sections by the trustee, it maintained that sinking fund moneys should not be applied to the purchase or redemption of serial bonds, until the long term bonds were retired; and it contended in the court below that it had the right to use the sinking fund exclusively in the purchase and retirement of the long term bonds at a premium, and that it was not bound to use the sinking fund under any circumstances in the retirement of the serial, or presently maturing, bonds, while any of the long term bonds were outstanding. This view was not accepted by the court below; it held on the contrary, that the position assumed by appellant in this matter, was wholly untenable, and it ordered and adjudged:

"1. That defendant be and is hereby enjoined from at any time using the sinking fund under the mortgage involved in this case to retire long term bonds at five per cent premium, unless and until the defendant has first made diligent but unsuccessful efforts to retire serial bonds at par.

"2. That by the terms of said bond and mortgage said sinking fund is applicable in the hands of the defendant as trustee to retire at par serial bonds, both as and when they severally mature, and also at any time before maturity."

Counsel for appellant criticise the decree in this case as being purely advisory; but we do not so regard it. An actual dispute has arisen between the mortgagor and the trustee, and a court of equity has been asked to decide the precise question

which has arisen. The trustee differed sharply with the debtor, in its interpretation of the language of the bonds and mortgage, and undertook to require more from the mortgagor than it deemed was required of it, under the contract. Certainly this raised a question proper for the court to decide, and in its determination, the court was not dealing with any mere abstract proposition. It was dealing with known facts, in a genuine contest.

The point in dispute is a narrow one. It is as to the proper use of the sinking fund. Should the trustee use it to purchase or redeem serial bonds as they fall due, or is it justified in using the fund to purchase at a premium long term bonds, unmatured? Common business prudence would suggest that if the way is open to obtain bonds at par, they should be taken, rather than others whose purchase would involve the payment of a premium. Unless there is something in the contract which requires the trustee to do otherwise, clearly it is bound to use the fund to the best advantage, by making it go as far as possible, and this would require it to apply it to the retirement of the serial bonds. There is no reason to discriminate against them. The serial bonds are entitled to the same protection under the mortgage as the long term bonds. We find nothing in the provision for the creation of the sinking fund, which makes it applicable to the retirement of one class of bonds, as against the other.

The primary object of the fund was to protect all the bond-holders by insuring the substitution of a sufficient amount of money, for such coal as might be mined and taken away from the premises. If the coal be not mined, but left in place, the sinking fund will only receive a minimum amount of $25,000 in each year. This is more than sufficient to cover the amount of serial bonds maturing each year, but under the right reserved to pay any of them off, upon each interest day, as many more of the serial bonds as are wanted may be called for payment. It is not clear why any doubt should be expressed under sec. (b) of the clause relating to the use of the sinking fund, as to the ability of the trustee to secure bonds, for obviously it has power to compel the holders of the serial bonds to accept

payment and surrender them upon any interest day.   Other things being equal, the long term bonds are the most valuable in the hands of the holders; they cannot be forced to surrender them for payment, unless a premium be paid for the right to call them.   In the exercise of a reasonable business discretion, the trustee would certainly allow the unmatured long term bonds to remain unpaid, as long as it could find investment for the sinking fund in the serial bonds which were maturing each year, and which it could call in for payment and surrender upon any interest paying date.   Only after the retirement of the serial bonds, would it be justified in applying the sinking fund to the purchase of the higher priced long term bonds.   It matters not whether the sinking fund be sufficient to pay all the long term bonds at maturity.   That will depend upon how much coal is mined.   If it be not mined or removed, it will remain as security for the bondholders, against which they may enforce their demand for payment of the bonds at maturity, if need be.

The trustee is bound to deal fairly and equitably with all parties to the transaction, and the discretion which it may use is a legal discretion, and not an individual or arbitrary judgment.   Any abuse of discretion upon the part of a trustee is clearly a matter for correction in a court of equity.

The decree of the court below in this case does not go beyond what is required by a fair and reasonable construction of the terms of the instrument creating the trust.

The assignments of error are overruled and the decree is affirmed, and this appeal is dismissed at the cost of the appellant.