Williamsport National Bank, Appellant, *v.* First National Bank of Williamsport.

Argued January 17, 1939. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Gilbert Nurick,* with him *Sterling G. McNees,* of *Mc-Nees, Hollinger & Nurick, John Barbe Cupp* and *James H. Booser,* for appellant.

*Seth T. McCormick, Jr.,* of *McCormick, Herdic & Furst,* with him *J. Fred Katzmaier,* for appellee.

OPINION BY MR. JUSTICE LINN, March 22, 1939:

Plaintiff appeals from judgment on a case stated. The question is whether a sinking fund payment to the mortgage trustee shall be applied to the redemption of bonds generally or to bonds of a particular denomination. The bonds were issued by a corporation, Sprout, Waldron & Company, in three denominations, designated M, D and C bonds; in all, $413,000 par value are outstanding. The M bonds were numbered from 1 to 160. The plaintiff holds $132,000 M bonds. The mortgage securing the bonds was dated October 1, 1930, to mature October 1, 1960. The defendant is the mortgage trustee.

The mortgagor got into financial difficulty and, January 1, 1935, proposed a "Plan of Financial Readjustment." It recited that the company had been unable to earn its interest "since October 1, 1933, and sinking fund payments for the years 1932, 1933, and 1934, aggregating

"$75,000," and also referred to past due notes and other matured indebtedness. It contained the following: "Briefly, the plan asks from bondholders that past due sinking fund payments be waived and that sinking funds for the next three years also be waived. Provisions are made for renewal of sinking fund payments in the fourth and fifth years on a reduced basis, and the full sinking fund payments required by the mortgage would be resumed during the sixth year."

The creditors' agreement, which was executed to put the plan in operation, provided accordingly: "1. Sinking fund payments required by the provisions of the mortgage . . . heretofore due and unpaid shall be waived, and future sinking funds shall be waived for a period of three (3) years, or until January 1, 1938. For the year 1938 the Company shall be obliged to pay $10,000 into such sinking fund for the retirement of bonds; for the year 1939 such sinking fund payment shall be $15,000, and thereafter at the rate of $25,000 per year, the amount provided in the mortgage." The use to be made of such payments was not specifically provided for. The rate of interest on the bonds was conditionally reduced to 3% and provision was made for funding back interest at the same rate.

On February 27, 1937, the mortgagor paid the sum of $8,918.49 to the defendant for sinking fund purposes. The plaintiff, as holder of $132,000 M bonds, demanded that it be applied to the redemption of M bonds. The trustee refused. The purpose of the case stated was to determine whether the sum should be used "only for the retirement and redemption of bonds numbered from M1 to M160, inclusive, or for the retirement and redemption of all bonds secured by said mortgage, irrespective of number." The learned court below was of opinion that it was the duty of the trustee to use the money paid, as has been stated, after January 2, 1937, for the retirement of bonds generally and not for the retirement of M bonds only.

The parties appear to agree that the payment of $8,918.49 was made pursuant to paragraph 5* of the creditors' agreement which provided that, if prior to 1940 the mortgagor earned sufficient net income, as defined in the agreement, that sum should be applied to the sinking fund for the payment of bonds and outstanding notes.

The decision of course turns on the meaning of the sinking fund provisions of the mortgage and of the creditors' agreement. While the mortgage provided that on the request of the holders of "25% in amount of the then outstanding bonds" the trustee might declare a default, none was declared. The mortgage, in article 4, provided for annual sinking fund payments until 1960. It provided that sinking fund payments made "between January 2, 1931, and January 2, 1937, both dates inclusive, shall be applied by the Trustee to the payment and redemption of bonds numbered M1 to M160, inclusive. . . ." It also provided that sinking fund payments after January 2, 1937, might, at the option of the mortgagor, be made in bonds or cash. Article 4, section 1, paragraph (c) contained the following: "(c) In making any Sinking Fund payments after January 2, 1937, the Company may, at its option, deliver to the Trustee, any bond, or bonds [outstanding, which] . . . shall be accepted by the Trustee, in lieu pro tanto, of cash to

---

* "5. If in any calendar year prior to January 1, 1940, the Company shall earn a net income, as determined by reputable certified public accountants, after all taxes, interest charges, reasonable depreciation on the Company's physical property at rates current in similar industries, and a reserve of one (1) per cent of sales for uncollectible accounts, then such net income in an amount not exceeding $35,000, including payments made to the sinking funds, as provided in Paragraphs 1 and 4, shall be applied to the sinking fund for the payment of the bonds and notes of the Company in the following proportions: Five-sevenths (5/7) thereof to the sinking fund for payment of bonds and two-sevenths (2/7) thereof for payment of the Company's Twenty-Year notes."

134

the extent of the redemption price thereof, for the year when so tendered, and of interest accrued thereon, to the date of redemption, in the case of every Bond so delivered in lieu of a cash payment required to be made pursuant to the provisions in paragraph (a) hereof, and for the purposes of this section, such Bond shall be deemed to be a Bond redeemed through the operation of the Sinking Fund payment in respect of which it was delivered to the Trustee by the Company.

"All payments to the Trustee, as a Sinking Fund, made between January 2, 1931, and January 2, 1937, both dates inclusive, shall be applied by the Trustee to the payment and redemption of bonds numbered M1 to M160, inclusive, issued by the Company and the payment of which is secured hereby. In the event any of said bonds numbered M1 to M160, inclusive, shall have been retired by the operation of paragraph (b) hereof, the succeeding payment to the Sinking Fund required by paragraph (a) hereof shall be reduced in an amount corresponding to the aggregate face value of the bonds so retired.

"Upon receipt of any of the annual payments to the Sinking Fund, required to be made by paragraph (a) following January 2, 1937, and upon further receipt from the Company of an amount sufficient to pay accrued interest to the redemption date on the bond to be redeemed as hereinafter stated, which amount the Company agrees to pay, the Trustee shall draw by lot for redemption, the numbers of Bonds therefore authenticated and delivered by the Trustee, but not cancelled or paid, or theretofore called for redemption, sufficient in amount as nearly as may be, at the redemption price then in effect, to exhaust all cash paid to the Trustee by the Company on account of such annual Sinking Fund payment.

"Upon receipt of any cash payments into the Sinking Fund other than the annual payments provided for by paragraph (a) of this article, and whenever the Trustee shall upon such payments, have available for such purpose the sum of at least $2,000, the Trustee shall, from

time to time, purchase, in the open market, or at private sale, or upon any exchange, or in any of said ways, at the then market price thereof, or at the best price at which they are obtainable, as many of the bonds as can be purchased with said money then in the Sinking Fund; provided, however, that no purchase shall be so made of any Bond at a price exceeding accrued interest and the redemption price then in effect."

Section 2 provided the redemption prices, M bonds being redeemable at par and interest, the others at slightly higher prices to given dates; after that, at par.

The position of the plaintiff was that the mortgagor intended that the M bonds should be redeemed before other bonds and that the creditors' agreement "did not affect the priority in payment and redemption of the bonds numbered M1 to M160."

The contracts must of course be construed in the light of the circumstances in which they were made. The creditors' agreement provided "10. All of the provisions of the mortgage indenture securing the First Mortgage Bonds of the Company, including the operation of the sinking fund, shall be and remain in full force and effect, except as modified by this Agreement." We think the intention expressed is clearly inconsistent with the intention which plaintiff contends should be inferred; if the purpose had been that suggested by the plaintiff, it could and doubtless would have been stated in a few words. The court may not supply them. The mortgage and the bond, which must of course be read as part of the mortgage in which it is set forth, provided that sinking fund payments made to January 2, 1937, inclusive, should be used to redeem M bonds. The fact is that the sinking fund payments were not made and that, instead of having a default declared and proceedings to collect, the creditors' agreement was made. They agreed that past sinking fund defaults "shall be waived, and future sinking funds shall be waived for a period of three years, or until January 1, 1938. For the year 1938 the Com-

pany shall be obliged to pay $10,000 into such sinking fund for the retirement of bonds; for the year 1939 such sinking fund payment shall be $15,000, and thereafter at the rate of $25,000 per year, the amount provided in the mortgage." Such payments would not satisfy the original requirement of the mortgage.

The creditors' waiver is definite. The waiver was a relinquishment of the right. The second agreement was a substitution for the first, as far as it went, and is consistent with the intention stated in the reorganization plan. The M bonds outstanding were less than half; the plan was not to be operative until 95% of all the creditors agreed to it; bondholders would have been justified in assenting on the understanding, from the papers submitted to the creditors, that the provision for the priority of redemption of the M bonds before January 2, 1937, was no longer to be enjoyed by holders of such bonds, an advantage calculated to induce assent to the creditors' agreement. It is quite possible that a sufficient number of bondholders refrained from requesting the trustee to declare a default, thinking that the waiver of the prior right of redemption of M bonds improved the value of their D and C bonds.

The appellant quotes a portion of the bond stating that the mortgagor will redeem the M bonds yearly until all are redeemed. But, as has been said, the provision must be read with other provisions of the mortgage, some of which have been referred to above, and as affected by the creditors' agreement. The provision was modified by the creditors' agreement which specifically dealt with the sinking fund, the only source from which the bonds could have been redeemed. The appellant says the sinking fund payment is in trust and that the trustee may not discriminate between classes of bonds in applying the sinking fund. The proposition is sound (*Struthers Coal & Coke Co. v. Union Trust Company*, 227 Pa. 29, 75 A. 986), but has no application to the facts. Here the parties have agreed that payments made after January

2, 1937, shall be applied in a specified way. The payment was made after January 2, 1937, and was therefore not restricted as originally provided in the mortgage.

The judgment is affirmed.